IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 CR 323 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| ILIJA RISTIK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Ilija Ristik's motion to dismiss the indictment [89] is denied.

**STATEMENT**

Defendant Ilija Ristik is charged with six counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1346. (ECF No. 12, Indictment.) The indictment alleges as follows. Ristik's codefendant, Ken Miller, allegedly owned and/or controlled Company A and was also employed as a Vice President of Victim Company 1, "a surface transportation, delivery, and logistics company[.]" (*Id*. ¶¶ 1(a), 1(d), 1(f).) Ristik owned and/or controlled trucking Companies B1, B2, and B4, and, between November 2018 and June 22, 2020, directed a scheme through which companies B1 and B4 paid bribes and kickbacks of at least $280,000.00 to Company A. (*Id*. ¶¶ 1(b), 1(g)-1(j), 2, 3.) Miller caused other Victim Company 1 employees to assign $13,000,000.00 in Victim Company 1's trucking business to companies Ristik directed, including Companies B1, B2, and B3. (*Id*. ¶¶ 1(i), 3, 4.) Miller concealed from Victim Company 1 his interest in Company A and transactions with Ristik and Ristik's companies, and Miller and Ristik concealed the bribes and kickbacks paid through Company A. (*Id*. ¶¶ 5-6.) Through their actions, they deprived Victim Company 1 of Miller's honest services, "including [his] obligation to follow Victim Company 1's Code of Ethical and Professional Standards, which prohibited, among other things, bribes, kickbacks, and payments meant to influence business decisions." (*Id*. ¶ 1(d).) In furtherance of Miller's and Ristik's arrangement, Ristik caused at least six bank transactions (each of which is the subject of one count of the indictment) and advised Miller to lie to both Victim Company 1 and the Federal Bureau of Investigation by falsely describing the payments to Miller's Company A as loan repayments and "compensation for Miller's work on a tequila venture." (*Id*. ¶¶ 3, 6, 7.)

Ristik moves to dismiss all six counts of the indictment as factually and legally deficient. An indictment need not provide intricate facts as to the crime alleged, *see United States v. Firtash*, 392 F. Supp. 3d 872, 881-82 (N.D. Ill. 2019) ("Unlike civil complaints, which must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face, indictments need not exhaustively recount the facts surrounding a crime's commission.") (cleaned up), but just "a plain, concise, and definite written statement of the essential facts constituting the

offense charged." Fed. R. Crim. P. 7(c)(1). "Indeed, the Seventh Circuit maintains that an indictment is generally sufficient so long as it accomplishes three functions: 'it must set out each of the elements of the crime to be charged; it must provide adequate notice of the nature of the charge so that the accused may prepare a defense; and it must allow the defendant to raise the judgment as a bar to future prosecutions for the same offense.'" *Firtash*, 392 F. Supp. 3d at 882 (quoting *United States v. Barrios-Ramos*, 732 F. App'x 457, 459 (7th Cir. 2018)). "On a motion to dismiss, courts review indictments 'on a practical basis and in their entirety, rather than in a hypertechnical manner,' [] and assume all facts asserted therein to be true." *Id.* (citations omitted).

Ristik moves to dismiss the indictment on the bases that it lacks "'a plain, concise and definite' written statement of essential facts constituting the charged offenses" and needs specificity, and the honest-services fraud statute upon which his charges rest is unconstitutionally vague. The Court begins with Ristik's first argument, which requires an examination of the charged offenses.

The wire fraud statute, 18 U.S.C. § 1343, provides that:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. Section 1346 provides that, "[f]or the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Accordingly, the elements of honest-services wire fraud are that: (1) the defendant knowingly devised or participated in a scheme to defraud another of its right to honest services through bribery or kickbacks, (2) he did so knowingly and with the intent to defraud; (3) the scheme to defraud involved a materially false pretense, representation, promise, omission, or concealment; and (4) for the purpose of carrying out the scheme or attempting to do so, the defendant caused interstate wire communications to take place. *See* Pattern Criminal Jury Instructions of the Seventh Circuit at 611-34 ("Pattern Crim. Jury Instr.") (citations omitted); *see also United States v. Woods*, 978 F.3d 554, 563 n.3 (8th Cir. 2020).

As the government points out, Ristik's multipronged attack on the factual content of the indictment is inconsistent with the standard to which indictments are held on a motion to dismiss, which "tests only whether an offense has been sufficiently charged," and "is not intended to be a 'summary trial of the evidence.'" *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989) (quoting *United States v. Winer*, 323 F. Supp. 604, 605 (E.D. Pa. 1971)).

This indictment does what it must to be upheld—it sets forth the elements of honest-services wire fraud, apprises Ristik of the nature of the charge, and allows him to raise the charge as a bar against future prosecution. The indictment alleges that Ristik knowingly devised or

2

participated in a scheme calculated to defraud Victim Company 1 of the honest services of its Vice President, Miller. In particular, Ristik allegedly caused $280,000.00 in payments, meant as bribes or kickbacks, to Miller's Company A to lead Miller to direct $13,000,000.00 in Victim Company 1's trucking business to companies Ristik designated. Ristik further directed Miller to keep Victim Company 1 in the dark by lying about the purpose of the $280,000.00 payments.

Contrary to Ristik's arguments, the foregoing is adequate to suggest a scheme to defraud and its materiality because the concealed payments to a company affiliated with Miller certainly would have been capable of influencing his assignment of Victim Company 1's shipping business. *See* Pattern Crim. Jury Instr. at 620; *see also United States v. Fernandez*, 282 F.3d 500, 508-09 (7th Cir. 2002) (finding that an indictment sufficiently alleged materiality where the alleged false paperwork in a bid for a municipal project "clearly would have influenced [the decisionmaker's] decision to award the contracts" for the project); *United States v. Elliott*, 711 F. Supp. 425, 429-30 (N.D. Ill. 1989) (denying motion to dismiss wire-fraud charges that did not reference materiality where, read as a whole, indictment alleged "materiality in substance"). Ristik's directive to Miller to lie about the payments' purpose as alleged in the indictment further indicates Ristik's knowledge of the concealment and awareness of the materiality of the scheme and concealed payments, as well as his intent to deceive and to deprive Victim Company 1 of Miller's honest services. *See* Pattern Crim. Jury Instr. at 615-17, 620-22 (defining "scheme to defraud," "material," and "intent to defraud").

Despite Ristik's protests, it is inconsequential that the indictment does not allege that Ristik himself owed a fiduciary duty to Victim Company 1. Although the Supreme Court observed that "[t]he vast majority' of honest-services cases involved offenders who, in violation of *a fiduciary duty*, participate in bribery or kickback schemes," *Skilling v. United States*, 561 U.S. 358, 407 (2010) (emphasis added), "nothing in *Skilling*'s language or context suggests that" only the fiduciary who received the bribe could be held responsible, and such "a distinction [] would conflict with the statute's language embracing those who participate in 'any scheme . . . to defraud.'" *See United States v. Urciuoli*, 613 F.3d 11, 17-18 (1st Cir. 2010) (quoting 18 U.S.C. § 1341) (additional citations omitted). Tellingly, "of the nine circuit court cases that *Skilling* cites as exemplars of 'core' honest service fraud cases, two involve convictions of individuals who bribed another to violate his fiduciary duties." *Id*. It therefore is enough that the indictment alleges that one of the schemers, Miller, owed a duty of honest services to Victim Company 1.[1] *See* Pattern Crim. Jury Instr. at 623 ("An employee owes a fiduciary duty to his employer. . . . The defendant need not owe the fiduciary duty personally, so long as he devises or participates in a bribery or kickback scheme intended to deprive the . . . employer . . . of its right to a fiduciary's honest services.") (citations omitted).

---

[1] Ristik also suggests, without citation to legal authority, that the indictment is insufficient for failing to allege that he was "aware of Miller's duty of honest services to [Victim] Company 1, or the Company's Code of Ethical and Professional Standards that Miller was obligated to follow." (ECF No. 99, Def.'s Reply, at 3; ECF No. 89, at 18 (similar).) Those allegations are not required. Even so, the allegations that Ristik encouraged Miller to lie about the nature of the payments to Company A suggest that Ristik knew or reasonably foresaw that Miller's conduct violated his duty of honest services to Victim Company 1.

Ristik also questions the sufficiency of allegations of harm to Victim Company 1. Relying upon statements in *United States v. Lemire*, 720 F.2d 1327, 1335 (D.C. Cir. 1983) ("[W]e [have] held that 'not every breach of fiduciary duty works a criminal fraud.'") and *United States v. Sun-Diamond Growers of California*, 138 F.3d 961, 973 (D.C. Cir. 1998) ("[A]bsent reasonably foreseeable economic harm, '[p]roof that the employer simply suffered only the loss of the loyalty and fidelity of the [employee] is insufficient to convict.'") (alterations in original) (quoting *United States v. Frost*, 125 F.3d 346, 368 (6th Cir. 1997)), Ristik argues that the indictment "fails to allege facts" showing that Ristik "contemplated (*any* harm) to [Victim] Company 1, or it was foreseeable that that [sic] Miller would deprive [the] company of his honest services." (ECF No. 89 at 15 (emphasis in original).) The Court disagrees.

No tangible harm to Victim Company 1 is required. *United States v. Nayak*, 769 F.3d 978, 983 (7th Cir. 2014) (explaining that "what we found objectionable [in *United States v. Hausmann*, 345 F.3d 952, 957 (7th Cir. 2003)] was the *intangible* harm that Hausmann's clients suffered when their lawyer violated his fiduciary duty and deprived them of his honest services") (emphasis added). It is enough that economic harm to Victim Company 1 was within Ristik's reasonable contemplation. *See Sun-Diamond*, 138 F.3d at 974 ("We disagree with Sun-Diamond's contention that § 1346 and *Lemire* require the government to show that the defendant intended to cause economic harm to his victim"; instead, "economic harm must [only] be within the defendant's reasonable contemplation," such that the jury could find that "'the non-disclosure furthers a scheme to abuse the trust of an employer in a manner that makes an identifiable harm to him, apart from the breach itself, *reasonably foreseeable*'") (quoting and adding emphasis to *Lemire*, 720 F.2d at 1337). The allegations in the indictment are sufficient to indicate that Ristik contemplated or at least reasonably could have foreseen that Miller would deprive Victim Company 1 of Miller's honest services as its Vice President and that Victim Company 1 could (whether or not it did) lose money because of the concealed payments to Company A in exchange for Victim Company 1's shipping business. *See United States v. Bryza*, 522 F.2d 414, 422 (7th Cir. 1975) ("Although Bryza argues he obtained the best possible contracts for his employer, [the employer] was entitled to negotiate those purchases with the knowledge of its employee's interest."); Pattern Crim. Jury Instr. at 631 ("The . . . wire . . . fraud statute can be violated whether or not there is any loss or damage to the victim of the crime [or] gain to the defendant.") (citing *United States v. Lupton*, 620 F.3d 790, 805 (7th Cir. 2010)).

The indictment also sufficiently alleges that six payments Ristik had sent to Miller's Company A were kickbacks or bribes from Miller's referral of more than $13,000,000.00 in business to the companies Ristik chose, as opposed to legitimate payments of a debt or to compensate Miller as to a "tequila venture." (ECF No. 89 at 17.) As the government points out, it is enough to "set[] out the mailings charged and alleg[e] that they were in furtherance of a scheme" so long as it is "conceivable" that the government could produce evidence "at trial to substantiate its 'in furtherance' allegation." *United States v. Castor*, 558 F.2d 379, 384-85 (7th Cir. 1977). It is eminently conceivable that the government could produce substantiating evidence that the payments to Company A were bribes or kickbacks for Victim Company 1's trucking business and thus were in furtherance of a scheme to defraud. *See Bryza*, 522 F.2d at 422-23 (upholding defendant's mail fraud conviction for deprivation of honest services from his private employer, where defendant used a false name and accepted payments channeled through a

4

company he had organized for that purpose). Any attack on the government's ability to prove the elements against Ristik must await trial.

Nor does the indictment lack specificity, as Ristik contends. Citing *United States v. Zandstra*, No. 00 CR 209 RWS, 2000 WL 1368050, at *6 (S.D.N.Y. 2000) and *United States v. Lino*, 00 CR 632(WHP), 2001 WL 8356, at *4, 6 (S.D.N.Y. Jan. 2, 2001), both of which involve requests for bills of particulars under Federal Rule of Criminal Procedure 7(f),[2] Ristik insists that because the six wire fraud counts in the indictment identify payments totaling $20,758.25, which is substantially less than $280,000.00 in total payments that the government alleges occurred, the six counts are insufficient to advise him of the charges under Federal Rule of Criminal Procedure 12(b)(3)(B)(iv).[3] The Court is unpersuaded. *See United States v. Almaleh*, No. 17 Cr. 25 (ER), 2022 WL 602069, at *9 (S.D.N.Y. Feb. 28, 2022) (distinguishing *Zandstra* because the mail-fraud count there did not identify date or type of fraudulent materials and also denying motion for bill of particulars because defendant had been provided with specific examples of incidents when the defendants used the phone, email, or internet in furtherance of the alleged fraud). The indictment here identifies the dates and amounts of six wire transmissions from Companies B1 and B4 to Company A and therefore is sufficiently specific to notify Ristik of those charges; he may use discovery mechanisms to obtain more information.

Ristik's remaining challenges similarly are not failures in the sufficiency of the indictment but are either additional hypertechnical attacks on its factual content that go well beyond the legal requirements (*see* ECF No. 89 at 17-19) (listing purported insufficiencies of indictment, including that it does not iterate precisely "how" Victim Company 1's loads were assigned or directed to Ristik's chosen companies, identify Ristik's precise relationships to the companies he owned or controlled, indicate "whether a 'tequila venture' in fact existed," or spell out how Ristik stood to gain from the assignment of business to them) or restatements of the arguments the Court addressed above (*see id*. at 18 ("What specific duties, if any, did [Ristik] owe to [Victim] Company 1?").)

Finally, Ristik asserts that § 1346 "is unconstitutionally vague as applied" and "void on its face" for "vagueness" and "fails to give adequate notice of the prohibited conduct," thus "authoriz[ing] an arbitrary and discriminatory enforcement by the prosecution" in violation of the separation-of-powers clause. (ECF No. 89 at 20-25.) He attributes these problems to a statutory failure to define "the term 'intangible right of honest services.'" (*Id*. at 21.) The government aptly responds that the Supreme Court addressed that argument in *Skilling*, explaining that the Court "perceive[d] no significant risk" of "arbitrary prosecutions" under "the honest-services statute" because "[i]ts prohibition on bribes and kickbacks draws content" from preexisting case law and "federal statutes proscribing—and defining—similar crimes[,]" meaning that "[a] criminal defendant who participated in a bribery or kickback scheme[] . . .[] cannot tenably complain about prosecution under § 1346 on vagueness grounds." 561 U.S. at 412-13. Ristik's construction of

---

[2] To the extent Ristik's reliance upon cases invoking Rule 7(f) might indicate his intent to seek a bill of particulars, a bill of particulars is "unnecessary" where, as here "the information the defendant seeks is readily available through alternate means, such as discovery." *United States v. Modugumudi*, No. 18 CR 262, 2020 WL 733102, at *2 (N.D. Ill. Feb. 13, 2020) (citation omitted).

[3] Ristik presumably intended to refer to Rule 12(b)(3)(B)(iii).

his argument, based entirely upon cases that predate *Skilling*, is unpersuasive. Accordingly, Ristik's motion to dismiss the indictment is denied.

**DATE:** March 15, 2023

*/s/ Ronald A. Guzmán*
**Hon. Ronald A. Guzmán**
**United States District Judge**