**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 21 Cr 323 |
| | ) | |
| | ) | Hon. Edmond E. Chang |
| Ilija Ristik, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO EXCLUDE GOVERNMENT EXHIBIT 10**

Defendant Ilija Ristik, through his undersigned attorneys, hereby moves to exclude Government Exhibit (GX) 10 because it is not admissible as a business record under Fed. R. Evid. 803(6). In support of this motion, Defendant states as follows:

1. GX 10 is a spreadsheet prepared at the request of FBI Special Agent Todd Rathbun ("Rathbun Spreadsheet"), who was the government's case agent who presented the indictment to the grand jury. The Rathbun Spreadsheet purportedly consists of various components of JB Hunt load data that Agent Rathbun selected as relevant for his investigation.

2. In support of his grand jury testimony, and the government's corresponding request for return of the indictment, Agent Rathbun presented to the grand jury a graphical depiction of certain of the data contained in the Rathbun Spreadsheet, which the government has marked for trial as GX 21.

3. The Rathbun Spreadsheet was revised on and off over the course of a year (between April 2020 and May 2021) at the direction of Agent Rathbun, who

1

requested that a JB Hunt employee make certain changes to it because, among other things, Agent Rathbun wanted to "be able *to show* the significance of the [load] volume." (*See* emails from Agent Rathbun to Cornell Heldenbrand, attached collectively as Ex. 1, at 6 (emphasis added).) Agent Rathbun requested additional changes because he thought they would "*assist me* with tying out some revenue figures." (Ex. 1, at 9 (emphasis added).)

4. The Rathbun Spreadsheet is too voluminous to attach. A native copy of the document can be accessed here. GX 10 The first tab of the spreadsheet contains a "Version History," which appears to reflect at least some of the changes made at Agent Rathbun's request.

5. Even though the Rathbun Spreadsheet was indisputably prepared at the request of the government's case agent and was edited multiple times at Agent Rathbun's request in order to help him develop and demonstrate his prosecutorial theories, the government has indicated that it intends to seek admission of the Rathbun Spreadsheet under Fed. R. Fed. R. Evid. 803(6) as a "record of regularly conducted activity" of JB Hunt.

6. In support of its puzzling evidentiary position, the government tendered to the defense on May 14, 2024 a document entitled "Declaration Certifying Records of Regularly Conducted Activity," which was executed by William C. Dietrich, a Senior Vice President of JB Hunt, on May 5, 2024 (the "Dietrich Declaration," attached as Exhibit 2).

7. Based on the emails contained in Exhibit 1, it does not appear that

Dietrich had any interaction with Agent Rathbun regarding the Rathbun Spreadsheet or had any involvement in creating or modifying it.

8. The Dietrich Declaration, made under the penalty of perjury, states that Dietrich reviewed the "records attached hereto," but the declaration was not attached to any document(s) nor did it otherwise identify any document(s) that it was referring to.

9. Upon receipt of the Dietrich Declaration on May 14, 2024, defense counsel immediately (that same evening) requested information regarding the identity of the document(s) purportedly being certified and the basis for Dietrich's asserted knowledge regarding the Rathbun Spreadsheet. The government has indicated that it is digging into these issues, but as of this filing, defense counsel has not received any responsive information from the government on these two issues.

10. The Dietrich Declaration avers that the unspecified records, which reportedly include the Rathbun Spreadsheet, "were kept in the course of a regularly conducted business activity" and that JB Hunt "made such records as a regular practice." (Ex. 2.)

11. These unexplained assertions cannot be reconciled with the history of the Rathbun Spreadsheet and, in any event, are plainly insufficient to justify its admission into evidence.

12. Rule 803(6) provides as follows:

A record of an act, event, condition, opinion, or diagnosis if:

> (A) the record was made at or near the time by-or from information transmitted by-someone with knowledge;

3

>    (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>    (C) making the record was a regular practice of that activity;
>    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>    (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

13. The Dietrich Certification's bald assertion that the Rathbun Spreadsheet was "kept in the course of a regularly conducted business activity" by JB Hunt and that JB Hunt "made such record[ ] as a regular practice" as required by Fed. R. Evid. 803(6) is not, in light of the facts and circumstances set forth above, sufficient to allow admission of the Rathbun Spreadsheet into evidence.

14. It is well established that records compiled for the purpose of future litigation do not qualify as business records because they do not involve "regularly conducted business activity." *See Palmer v. Hoffman*, 318 U.S. 109 (1943). That is doubly true for documents prepared at the request of the government with an eye toward litigation. *U.S. v. Novotny*, 184 F.Supp.2d 1071, 1083 (D. Colo. 2001) (excluding profit and loss statements because they were "not maintained in the course of a regularly conducted business activity, but were instead prepared . . . in response to a specific request from Government counsel").

15. The Rathbun Spreadsheet was compiled, manipulated, and modified at the request of Agent Rathbun. Agent Rathbun, and his collaborator at JB Hunt, made material changes to various data fields. Certain vendors were added and removed.

Certain types of loads were removed, and certain data fields were added or removed, all at the request of Agent Rathbun. These choices involved judgment, and they were made solely for the purpose of assisting Agent Rathbun develop and demonstrate his prosecutorial theories.

16. Of course, the full import of this data selection and manipulation cannot be known by Defendant because Defendant does not have access to the JB Hunt data that Agent Rathbun, and his collaborator at JB Hunt, chose to exclude.

17. The fact that Defendant may not yet be able to establish how and why the data selection and manipulation may be inaccurate or misleading does not negate the government's failure to comply with the express requirements of Rule 803(6).

18. Because the government has not satisfied, and cannot satisfy, the requirements of Rule 803(6), the Rathbun Spreadsheet should be excluded from evidence.

Wherefore, for all of the foregoing reasons, Defendant requests that the Court deny the government's request to admit the Rathbun Spreadsheet as a business record under 803(6).

Respectfully submitted,

s/ *Douglas E. Whitney*
Douglas E. Whitney
Douglas Whitney Law Offices LLC
161 N. Clark Street, Suite 1700
Chicago, IL 60601
312-279-0510
doug.whitney@dwlollc.com


Joshua G. Herman
Attorney at Law
53 West Jackson Blvd., Suite 404
Chicago, IL 60604
Tel: 312-909-0434
jherman@joshhermanlaw.com

*Attorneys for Ilija Ristik*