UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILIJA RISTIK | No. 21 CR 323<br><br>Hon. Edmond E. Chang |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO EXCLUDE GOVERNMENT EXHIBIT 10**

Defendant's motion should be denied because the data contained in Government Exhibit 10 (GX10) is admissible as a business record under FRE 803(6).[1] Further, GX10 should be admitted pretrial pursuant to FRE 902(11) and the certification attached as Exhibit A, which was executed by William (Bill) Dietrich—a J.B. Hunt Senior Vice President of Intermodal Operations with about 27 years on the job.

As described in the 302 attached as Exhibit B, the data set forth in GX10 was pulled by a team at J.B. Hunt headed by Derek Bidwell who was a Director of Engineering and who led the intermodal engineering team responsible for collecting data generated by the operations systems. Bidwell explained that this data was stored in a database and included dispatching and load information, among other things. Bidwell helped respond to the FBI's request for the information in this case. Bidwell and his team used their knowledge of J.B. Hunt's internal systems to pull the

---

[1] Government Exhibit 10 was provided to the Court as part of the government's submission of its electronic exhibits on or about May 16, 2024.

data pursuant to the FBI's requests. Bidwell made clear that the FBI's requests for information did not cause Bidwell's team to alter the data.

Bidwell noted a few limited places in GX10 where the contents are not strictly speaking raw business record data. (The government has no objection to removing these limited portions from GX10.) Those limited parts are (1) rows 16 through 39 on the "Carrier List" tab (i.e., the version history, date range note, and internal coding section), (2) the columns setting forth percentages in the two pivot table tabs (which were simply layered on top of the raw data within the pivot tables), and (3) the "Queries" tab (which sets forth the SQL queries used by Bidwell's team to pull the data from the J.B. Hunt database).

While Dietrich was not personally involved with pulling this data, he is familiar with the data as a function of his job and thus was in a position to complete the 902(11) certification.[2] Dietrich clarified that the certification covered this spreadsheet as well as its prior versions.

---

[2] In a prior interview, Dietrich explained that as SVPI, Dietrich covered the field operations for J.B. Hunt's business in the United States. Dietrich was based in J.B. Hunt's corporate office located in Arkansas but traveled frequently. As of 2020, Dietrich had been employed by J.B. Hunt for 23 years. Dietrich became the SVPI approximately four years before and moved to Arkansas for the position. Prior to being SVPI, Dietrich was a regional Vice President (VP) in J.B. Hunt's Dedicated Contract Services unit located in Dallas, Texas. Dietrich held that role for approximately 13 years before becoming SVPI. J.B. Hunt has approximately 48 driver hubs across the United States. The management of those hubs and their drivers rolled up under Dietrich's team as SVPI. Dietrich managed five regions across the United States and each region had its own Vice President (VP). The VPs under Dietrich were responsible for their specific regions. Dietrich's primary job duties consisted of making sure his regions were staffed appropriately to handle customer demands in the most efficient way possible.

It is clear that—consistent with the attached 902(11) certification—essentially all the information contained in GX10 constitutes run-of-the-mill business records. To be sure, the spreadsheet itself was not kept by J.B. Hunt in the course of its business, but the data within the spreadsheet was. This data was pulled, compiled, and provided to the FBI in the form of this spreadsheet. There is nothing wrong with that, nor does it transform the nature of the underlying data.

This exhibit is no more "prepared in anticipation of litigation" than any subpoena response provided by a bank pursuant to specific requests forth by the government within the subpoena. To be sure, the issuing FBI agent (Todd Rathbun) had a plan in mind for what he intended to do with the data to support the investigation. But Bidwell and his team simply responded to the FBI's requests for data with business record information pulled from the J.B. Hunt databases.

Defendant has failed to show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. *See* FRE 803(6)(E). The data is the data, even if the FBI requested it to support its case. Accordingly, defendant's motion should be denied and Government Exhibit 10 should be admitted pretrial.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: /s/ *Andrew C. Erskine*
ANDREW C. ERSKINE

BRIAN WILLIAMSON
Assistant U.S. Attorney
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-1875

Dated: May 28, 2024