**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 21-CR-00323-1 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| ILIJA RISTIK, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

The Court held a pretrial conference on May 29, 2024. This Order summarizes the motions and pretrial issues that were addressed during the pretrial conference, and also discusses the public-authority defense, entrapment by estoppel, and the innocent-intent defense.

## I. Motion in *Limine*

**Defense Motion for Disclosure of Favorable Evidence, R. 179**. The defense sought two categories of evidence: (1) evidence related to two persons who were purportedly the subjects of Defendant Ilija Ristik's cooperation underlying the public-authority defense, R. 179 at 2–5; and (2) evidence of payments made to co-defendant Ken Miller by other trucking vendors of J.B. Hunt Transport, *id.* R. 179 at 5–7.

At the pretrial conference, in response to the Court's inquiry on the first category, the government proffered that three of the five federal agents who met with Ristik during the relevant time period have no knowledge of the two alleged subjects. Indeed, at the conference, Ristik clarified that it was Agent Michael Mangan who authorized the investigation into the two alleged subjects. The Court directed the government to promptly ask Mangan about whether he had an investigative interest (or knew that the FBI had an investigative interest) in the two alleged subjects and file a status report by June 4.

After the pretrial conference, however, the government reported that the government attempted to speak with Agent Mangan, but was not responsive to the

inquiries and had retired from the FBI. R. 203 (sealed). Mangan responded to a motion to enforce the trial subpoena, R. 207, by asserting the Fifth Amendment right against self-incrimination, R. 211, 214. The Court held an *in camera* hearing with Mangan and his counsel, and held that Mangan had validly asserted the privilege, though his testimony would not assert Ristik's assertion of the public-authority defense, R. 222.[1]

On the second category (evidence of other vendors who paid Miller), the parties had conferred before the conference and the government agreed to allow the defense to transfer (via hard drive) any relevant documents that it deems useful for impeaching Miller on that topic. The defense has issued subpoenas to three vendors who allegedly made "gratuity" payments to Miller. One vendor has asserted the Fifth Amendment right against self-incrimination and moved to quash the trial subpoena. R. 227 (John Kurpiel). Although the invocation appears to be valid, the Court will wait, as the defense proposes, to decide the issue given that Miller's testimony might in any event render unnecessary the vendor testimony.

## II. Actual versus Apparent Authority

For witness-examination and jury-instructions purposes, it is worth clarifying now whether the public-authority defense requires Ristik to show reliance on an officer who is exercising *actual* authority in authorizing criminal conduct or, alternatively, is *apparent* authority enough for a successful defense. The federal appellate case law on this issue lines up almost entirely in favor of requiring the exercise of *actual* authority. This Court agrees.

In general, the public-authority defense applies when "the defendant engages in conduct that the defendant knows to be otherwise illegal but that has been authorized by the government." *United States v. Stallworth*, 656 F.3d 721, 727 (7th Cir. 2011). On the front-end—that is, the communication of authorization to the defendant—the affirmative defense "require[s] that a government official affirmatively communicate to the defendant that he is authorized to engage in certain conduct without incurring criminal liability." *Id.* at 726. On the receiving-end, "the public-authority defense requires reasonable reliance by a defendant on a public official's directive to

---

[1]Mangan's valid assertion of the right against self-incrimination moots, at least for now, the government's motion to bar impeachment of Mangan with a three-day unpaid suspension imposed by the FBI against him in 2015. R. 185.

2

engage in behavior that the defendant knows to be illegal." *United States v. Strahan*, 565 F.3d 1047, 1051 (7th Cir. 2009).

As an affirmative defense, it is the defendant's burden to prove the three elements comprising the public-authority defense— authority, affirmative communication, and reasonableness—by a preponderance of the evidence. According to the Seventh Circuit Pattern Instructions, these three elements require a defendant to show:

1. An agent … of the United States government … authorized the defendant to engage in the conduct charged against the defendant [in the pertinent counts]; and

2. This agent … had the actual authority to grant authorization for the defendant to engage in this conduct; and

3. In engaging in this conduct, the defendant reasonably relied on the authorization of the agent's … authorization.…

Seventh Circuit Pattern 6.06 (Reliance on Public Authority).

Although the Pattern Instructions says that the public-authority defense requires "actual" authority, the Seventh Circuit has not yet explicitly decided whether actual authority is required or if, instead, apparent authority would suffice. *See Stallworth,* 656 F.3d at 727 ("[A]s our sister circuits see it, the public authority defense is limited to those situations where the communication was from a government official acting with actual authority, and not merely apparent authority. We have not had occasion to address this, nor do we find it necessary to do so here.").

Six circuits have held that the exercise of *actual* authority is required. *See, e.g.*, *United States v. Holmquist*, 36 F.3d 154, 161 n. 6 (1st Cir. 1994); *id.* at 161 n.7 ("The nonexistent defense of apparent public authority … must not be confused with the potentially viable defense of actual public authority, which may come into play when a defendant undertakes certain acts, reasonably relying on the statements of a government agent cloaked with actual authority."); *United States v. Duggan*, 743 F.2d 59, 84 (2d Cir. 1984) ("We decline to adopt … [the] view that a defendant may be exonerated on the basis of his reliance on an authority that is only apparent and not real."), *abrogated on other grounds by United States v. Abu-Jihaad*, 630 F.3d 102, 127 (2d Cir. 2010); *United States v. Pitt*, 193 F.3d 751, 758 (3d Cir. 1999) ("This Court … limits the use of the defense of public authority to those situations where the government agent in fact had the authority to empower the defendant to perform

3

the acts in question."), *abrogated on other grounds by Honeycutt v. United States*, 581 U.S. 443, 447 n.1, 454 (2017); *United States v. Fulcher*, 250 F.3d 244, 252 (4th Cir. 2001) ("We hold, consistent with our sister circuits that have considered the question, that intent is not negated when a defendant cooperates with an official who possesses only *apparent* authority.") (emphasis in original); *United States v. Sariles*, 645 F.3d 315, 317 (5th Cir. 2011) ("[W]e find persuasive the reasoning of the great majority of our sister circuits that require actual authority on the part of the law enforcement officer, and we choose to follow that path."); *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015) (observing that "the government official on whom the defendant purportedly relied must have actually had the authority to permit a cooperating individual to commit the criminal act in question").

Against this circuit authority is the fractured 2-1 opinion in *United States v. Barker*, 546 F.2d 940, 950 (D.C. Cir. 1976). But no majority *holding* was established in the case because the two judges in the majority disagreed on the rationale for reversing the convictions. *Compare id.* at 954 (lead opinion) *with id.* at 955–56 (concurrence). Only the lead opinion, speaking for one judge, expressed the view that apparent authority is enough (so long as the defendant's reliance was reasonable). *Id.* at 954. The view of one appellate judge of one panel is insufficient to establish precedent on the issue, and indeed the D.C. Circuit has recognized the absence of a controlling holding emerging from *Barker*, *United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990) ("Although North's argument has an initial appeal because *Barker* is a previous case of our Circuit, we have read *Barker*, and reread it, and simply cannot find in it a rule of law to apply."), *modified on other grounds in part*, 920 F.2d 940 (D.C. Cir. 1990). So six circuits are on the actual-authority side of the ledger, and none have sided with apparent authority.

The Court agrees that the exercise of actual authority is required to successfully invoke the public-authority defense. At bottom, when a defendant relies on the authorization of an agent to commit a crime, and the agent does not have actual authority to grant the authorization, the defendant has made a mistake of law—which is generally not a defense in criminal law. *See United States v. Blagojevich*, 794 F.3d 729, 738 (7th Cir. 2015). Indeed, absent a willfulness requirement, even if a defendant subjectively *believes* that he was engaged in lawful conduct, a mistake of law is no defense. *Id.* So if a defendant mistakenly believes that an agent is exercising actual authority to grant authorization, but the defendant is wrong (despite apparent appearances), the defense fails.

4

Remember too that the public-authority defense applies in those settings in which the defendant is committing—in the first instance—a *crime* but has been authorized by an agent to do so. It is in those settings that the defendant ought to be on highest alert that actual authority is required to grant authorization to commit the conduct at issue—because the conduct is a crime. This actual-authority requirement also has the salutary effect of discouraging agents who are not exercising actual authority from violating required agency protocols, because the cooperators themselves are incentivized to ensure that there is actual authority to commit the crimes. Plus, viewed from the victim's perspective, the burden of the cooperator's mistake should fall on the cooperator—not the victim. Applied here, if there were no actual authority underlying Ristik's alleged bribery scheme, then J.B. Hunt ought not take the brunt of the crime. Applied more generally, a cooperator should bear the risk that the agent is not exercising actual authority (or, worse, is not even an agent at all), rather than imposing the cost on victims. That is not to say that an imperfect public-authority defense would have no relevance at sentencing; an imperfect defense might very well be mitigating. But it is to say that the exercise of actual authority is required to win on the public-authority defense.

### III. Entrapment by Estoppel and Innocent Intent

Although it is not strictly necessary to decide right now whether jury instructions will be given on the entrapment-by-estoppel defense and on what the defense labels the "innocent intent" defense, it is worth explaining the Court's preliminary views on those two defenses.

First, unlike the public-authority defense, entrapment by estoppel applies "when, acting with actual or apparent authority, a government official affirmatively assures the defendant that certain conduct is legal and the defendant reasonably believes that official." *United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006) (cleaned up).[2] So far, the proffered evidence does not suggest that any agent affirmatively assured Ristik that what he was doing was *legal* in the first instance. Perhaps Ristik will testify to that effect, but otherwise the proffered facts do not suggest that anyone told Ristik that engaging in a multimillion-dollar bribery scheme was legal. Indeed, the written admonishments on which Ristik is partly staking his defense

---

[2]This order uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

acknowledge in detail that the list of authorized acts are otherwise unlawful. *E.g.*, R. 193 at 9. If no factual predicate is introduced at trial to advance an entrapment by estoppel defense, then the Court will not instruct the jury on this defense.

Second, Ristik relies on an Eleventh Circuit case to argue that there is such a thing as an innocent-intent defense raised by the proffered facts, even if the public-authority were to fall short in some way. *United States v. Alvarado*, 808 F.3d 474, 487 (11th Cir. 2015) (observing that defendants may raise an innocent-intent theory of defense without regard to the kind of authority exercised by the agent). The Fourth Circuit seems to permit a version of this defense but only where the government agent exercises *actual* authority. *United States v. Fulcher*, 250 F.3d 244, 252 (4th Cir 2001) (allowing an innocent-intent defense but only where a defendant relies on government official who possesses actual authority). On the other side of the ledger, the Second Circuit has explained that even if there is such a defense, it would only apply where a defendant could show that the "nature of the intent element of the charged crime" would be "negate[d]" by the defendant's belief that his actions were authorized. *United States v. Giffen*, 473 F.3d 30, 43 (2d Cir. 2006).

Here, the Court is skeptical that the public-authority defense, or an imperfect version of it, would give rise to an innocent-intent defense. The charges of honest-services wire fraud require the government to prove beyond a reasonable doubt that Ristik participated in a bribery or kickback scheme *intended* to deprive J.B. Hunt of Miller's honest services. 18 U.S.C. § 1346; *see also* Seventh Circuit Pattern Instruction for 18 U.S.C. §§ 1341, 1343, 1346 (Definition of Honest Services). Intent to defraud is the required state of mind—which is different from the *motive* for why Ristik (allegedly) had the intent to defraud J.B. Hunt. This distinction means that "if money or property is obtained through knowingly false representations, the scheme to defraud is established, regardless of whether the defendant hoped, intended, or even expected that the victims would eventually be satisfied." *United States v. Hamilton*, 499 F.3d 734, 735, 737 (7th Cir. 2007) (approving jury instruction for mail and wire fraud); *see also United States v. Mabrook*, 301 F.3d 503, 509 (7th Cir. 2002) ("In order to establish good faith, Mabrook must prove that he actually believed the information that he sent to his investors, not that he believed that he would eventually pay them back."). In any event, this issue will be discussed further as needed at the in-trial jury instructions conference.

.

## IV. Miscellaneous

**Witnesses.** Both parties shall endeavor to avoid any time gaps in the trial due to witness availability.

**Miller Impeachment.** At the pretrial conference, given the decision to bar impeachment of Miller based on his military convictions, Ristik moved to preclude the government from arguing that when Miller was initially confronted by the FBI, his false statements to the agents were not made under oath. The government agreed that it would not downplay the false statements by arguing that they were not made under oath.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 16, 2024